Royal Indemnity Company, Appellant, v. Johanna M. Gray, Appellee.

Gen. No. 39,033.

Opinion filed March 24, 1937.

HETH & LISTER, of Chicago, for appellant.

D'ANCONA, PFLAUM & KOHLSAAT, of Chicago, for appellee; D. H. MANN, of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the plaintiff from a decree entered by the court dismissing the bill of complaint upon the master in chancery's report to whom the

cause was referred, and upon his recommendation that the bill be dismissed for want of equity.

Action was brought by the plaintiff against the defendant based upon its bill of complaint to recover from the defendant as the sole legatee under the last will and testament of Charles W. Gray, deceased, out of the assets received by her from said estate, the amount alleged to be due on an indemnity agreement signed in his lifetime by Charles W. Gray, defendant's husband, and certain other persons. The action was filed in equity in order to follow assets of Charles W. Gray into the hands of the defendant and to recover from said assets the amount due from Charles W. Gray, upon an obligation under the terms of an indemnity agreement.

No objections were filed to the master's report other than the objections of the plaintiff filed and considered by the court as exceptions to the application of the law to the facts appearing in evidence.

From the facts as outlined in the master's report, it appears that the Red Top Cab Company and the Cleveland Yellow Cab Company, being engaged in the operation of taxicabs in the city of Cleveland, in order to comply with the provisions of an ordinance, which by its terms provides that any taxicab company operating 200 or more cabs in the city of Cleveland is required to furnish a surety bond to secure the payment of amounts recovered against the cab company for personal injuries and property damage, made a written application to the plaintiff to execute a bond as surety in the sum of $75,000, guaranteeing payment of final judgments in accordance with the provisions of a city ordinance. Plaintiff executed the bond requested and delivered the same to the commissioner of licenses of the city of Cleveland. The bond runs to the city of Cleveland, and in compliance with the ordi-

nance, is conditioned upon the principals, the cab companies, paying all final judgments recovered against them for injury to one person up to the sum of $5,000, and $10,000 for injury to more than one person and $1,000 property damage in any one accident. The bond provides that "The liability of the surety is limited to the payment of said final judgments, as aforesaid, resulting from the failure of said principal so to do during the period said bond shall remain in full force, but in no event shall the total liability of the surety for such period exceed the penal amount herein stated, the sum of $75,000." This amount of $75,000 was deposited with the plaintiff to protect it against any liability as surety upon the bond.

To induce the plaintiff to execute the bond, Charles W. Gray, the husband of the defendant, and three others, executed an indemnity agreement with the plaintiff, which is the instrument herein sued on. This indemnity agreement recites that whereas the indemnitors having requested the plaintiff to execute the bond given by the Red Top Cab Co. and the Cleveland Yellow Cab Co. to the city of Cleveland, in the sum of $75,000, in accordance with the provisions of section 2540 of the Municipal Code of the City of Cleveland, of 1924, which ordinance was made a part of said indemnity agreement, the indemnitors agree:

"Second. That we will at all times indemnify and keep indemnified the surety, and hold and save it harmless from and against any and all demands, liabilities and expenses of whatsoever kind or nature, including counsel and attorneys' fees, which it shall at any time sustain or incur by reason or in consequence of having executed the said instrument; and that we will pay over, reimburse and make good to the surety, its successors, and assigns, all sums and amounts of

money which the surety or its representatives shall pay or cause to be paid or become liable to pay, under its obligation upon said instrument or as charges and expenses of whatsoever kind or nature, including counsel and attorneys' fees, by reason of the execution thereof, or in connection with any litigation, investigation or other matters connected therewith, such payment to be made to the surety as soon as it shall become liable therefor, whether it shall have paid out said sum or any part thereof or not.

"That in any settlement between us and the surety the vouchers or other proper evidence showing payment by the surety of any loss, damage or expense, shall be *prima facie* evidence against us of the fact and amount of our liability to the surety, provided that such payment shall have been made by the surety in good faith, believing that it was liable therefor."

The third paragraph relates to the giving of notice of any action at law or in equity.

"Fourth. The surety may at any time hereafter take such steps as it may deem necessary or proper to obtain its release from any and all liability under the said instrument, or under any other instrument within the meaning of Section Fifth hereof, and to secure and further indemnify itself against loss, and all damages and expense which the surety may sustain or incur or be put to in obtaining such release, or in further securing itself against loss, shall be borne and paid by us."

The fifth, sixth and seventh paragraphs relate to matters which are not material to the discussion of the questions involved in this suit.

It also appears from the facts as reported by the master that sometime prior to September 1, 1927, the Cleveland Yellow Cab Company took over, or absorbed, the Red Top Cab Company. On September 7,

1928, the Cleveland Yellow Cab Company went into the hands of a receiver, at which time there was pending against the company a large number of suits and claims for personal injuries and property damage. Thereafter many other such suits were instituted, until there were pending 124 actions against the Cleveland Yellow Cab Company, claiming a total of over a million and a quarter dollars in damages, a list of which suits is set forth in the master's report. The receiver for the Yellow Cab Company refused to defend any of the suits, and at that time the plaintiff was holding as collateral security $75,000 which had been deposited with it over a period of time by the principals of the bond.

Prior to the appointment of a receiver for the Yellow Cab Company, Nat E. Wheeler, counsel in charge of the bonding claims for the plaintiff, had written to the law firm of Baker, Hostetler & Sidlo of Cleveland, Ohio, seeking the legal opinion of that firm as to whether or not liability of the plaintiff on its bond was limited to $75,000; that is, whether the provisions of the ordinance requiring that the bond contain a provision for a continuing liability notwithstanding any recovery thereon, would be read into the bond and thus make it one of open covenant.

The provision of the ordinance in question is as follows:

"Sec. 2540. Surety Bond or Liability Insurance. It shall be unlawful to operate a public hack or other vehicle kept for hire as defined in this sub-division, or permit such to be operated, nor shall any license be issued hereunder until and unless the applicant for a license hereunder deposits with the commissioner of assessments and licenses:

"(A) A bond of the applicant with a solvent and responsible surety company, authorized under the

laws of the state of Ohio, as surety thereof, acceptable to and approved by the said commissioner and the director of law, said bond conditioned that the applicant will pay all final judgments recovered against such applicant for injury to one person up to the sum of $5,000 and $10,000 for injury to more than one person and $1,000 property damage in any one accident during the operation of the public hack of the applicant; . . . for more than 200 public hacks a bond of $75,000; and said bond shall contain a further provision obligating the said surety company to give 10 days written notice before cancellation of the said bond to the said commissioner, the said license to expire on the lapse or termination of said bond; or `` . . .

``(C) Such bond or policy of insurance shall contain a provision for a continuing liability thereunder to the full amount thereof, notwithstanding any recovery thereon. If at any time in the judgment of the said commissioner such bond or policy is not sufficient for any cause the said commissioner may require the owner of each public hack to replace such bond or policy with another approved by said commissioner and the director of law.''

On September 7, 1927, the firm replied to the request of counsel in charge of the bonding claims for the plaintiff, and after citing and commenting on numerous decisions, concluded the letter by stating that it was the opinion of these attorneys that as long as the bond remained in force the bonding company's liability would be governed by the code section, which we have quoted above, and not by the attempted limitation of the bonding company to $75,000, and being governed by the code of the city of Cleveland, the liability on this bond amounted to a continuing one.

For some years prior to the receivership, the firm of Rocker & Schwartz had defended personal injury and property damage suits for the Cleveland Yellow Cab Company and appeared as attorneys of record in the suits which were pending against the Yellow Cab Company at the time the receiver was appointed.

It appears from the report of the master that Mr. Schwartz, of the firm of Rocker & Schwartz, was informed by the receiver of the company that the receiver would not pay any fees for handling any of the pending claims, and that Mr. Schwartz advised the Royal Indemnity Company that unless some arrangements were made to pay him he was going to withdraw from further defense of the cases. Whereupon, the firm of Rocker & Schwartz was employed by the Royal Indemnity Company to handle these claims and suits; that these attorneys submitted bills for legal services rendered, to the Royal Indemnity Company for $1,291, and received plaintiff's draft for that amount. Thereafter, this firm received $1,000 for defending and disposing of all the remaining cases of the Cleveland Yellow Cab Company, and the bill was paid to this firm by the plaintiff.

In order to dispose of the liability of the plaintiff upon this bond, there was a conference between the executive officers of the plaintiff company and the members of the firm of Baker, Hostetler & Sidlo, and as a result of this conference the firm of Baker, Hostetler & Sidlo was employed by the plaintiff and advised with the law director of the city of Cleveland as to the advisability of instituting a suit by the city of Cleveland, making the two cab companies, the Royal Indemnity Company, and all known and unknown claimants, including minors, parties defendant; to compel the Royal Indemnity Company to deposit the

$75,000 held by it with the clerk of the court for the benefit of all claimants; to require all claimants to assert their claims in that proceeding; to publish for all unknown claimants, to bar all future claims unless asserted within a day to be fixed by the court.

The procedure, as above outlined, was suggested to the law director of the city of Cleveland, to which he agreed. A complaint pursuant to these suggestions was prepared by the firm of Baker, Hostetler and Sidlo and filed by the city of Cleveland on January 29, 1929, in which the Cleveland Yellow Cab Company, the Red Top Cab Company, the Royal Indemnity Company, and all known and unknown claimants were made parties defendant.

In the litigation instituted on January 29, 1929, on motion of the city of Cleveland, the Royal Indemnity Company was ordered to deposit on or before April 10, 1929, the sum of $75,000 with the clerk of the court and upon deposit of the same ''the Royal Indemnity Company is relieved and discharged from any and all further liability as a surety created by or arising out of the bond heretofore given to the City of Cleveland by the Cleveland Yellow Cab Company and the Red Top Cab Company as principals, and Royal Indemnity Company, as surety.'' This amount was deposited by the plaintiff with the clerk of the court in compliance with the order entered by the court, and the Royal Indemnity Company was released from any and all liability.

On the 14th day of October, 1930, a final decree was entered in the pending litigation, from which it appears that all claims were settled and final judgments were entered in all of the pending cases; that the clerk had in his possession the sum of $79,143.60, which was made up of the $75,000 deposited by the Royal Indem-

nity Company and the accumulated interest thereon, and used to pay the several amounts decreed by the court to be paid.

Subsequent to the entry of this decree, the firm of Baker, Hostetler and Sidlo submitted a bill for legal services rendered for the Royal Indemnity Company in the proceedings outlined in this opinion extending from November 2, 1928 to October 30, 1930. For services rendered and money expended by this firm there was due them $10,274.27, which amount was afterwards reduced to $7,500 plus disbursements, and on May 19, 1931, the plaintiff paid the bill in the amount of $7,774.27.

The action now pending is on the indemnity agreement to collect from the assets left by Charles W. Gray, deceased, one of the indemnitors, the sum of $10,065.27, made up of $2,291 paid to Rocker & Schwartz and $7,774.27 paid to Baker, Hostetler & Sidlo.

The defendant is the widow and sole legatee of the deceased indemnitor who died December 25, 1927. His will was admitted to probate January 31, 1928; the time allowed by law for filing claims against his estate expired January 31, 1929, and his estate was closed April 15, 1929. The defendant as sole legatee received in excess of $25,000 from the estate and the present action seeks to follow said legacy upon the theory of *Union Trust Co. v. Shoemaker,* 258 Ill. 564, the claim of plaintiff having ripened subsequent to the time for filing claims and the distribution of assets in the probate proceeding pending in the probate court of Cook county, Illinois.

The question of whether under the indemnity bond the defendant can be held liable for the amount paid by the plaintiff for attorneys' fees for services ren-

dered in the defense of suits against the cab company, alleged to be due from the company for personal injuries and property damage, and also for the amount paid for attorneys' fees by the plaintiff for services rendered in the proceeding wherein the plaintiff was released from further liability upon his bond, must be determined from the terms of the indemnity agreement itself. The agreement by its terms clearly establishes that it was a mutual agreement and provides that the indemnitors shall pay all money for which the surety shall be liable under its obligation upon the bond. This contract was prepared by the plaintiff, and under the well settled rule of law, will be strongly interpreted against the plaintiff where there is a question of doubt. It is to be borne in mind that the plaintiff was released from all liability under the terms of the decree entered in the court of common pleas of Cuyahoga county, Ohio, in a suit of the city of Cleveland against the Cleveland Yellow Cab Company, filed on October 14, 1930.

The plaintiff contends that the indemnitors are liable for all sums paid by the plaintiff over and above the $75,000 deposited with the plaintiff for its protection. The contract provides by its first paragraph that upon the payment of the yearly premiums "the surety shall be and continue liable upon the said instrument (the bond), and until the surety shall have been fully discharged and released from any and all liability." Therefore, by plaintiff's own admission, the decree fully discharged the plaintiff from further liability, and of course if the contract were based upon a good and valuable consideration, plaintiff's action would be warranted. This contract, however, is modified when we take into consideration that the plaintiff signed an indemnity bond which was filed with the

city officials of the city of Cleveland, Ohio, and assumed certain liability under the provisions of section 2540 of the Municipal Code of the city of Cleveland of 1924, as amended on October 6, 1924. This ordinance is applicable when we consider the plaintiff had knowledge of its provisions when it executed the bond. By the bond it sought to limit its liability to the amount of $75,000 deposited with the surety. In the litigation filed in the Common Pleas Court of Cuyahoga County, Ohio, the Royal Indemnity Company deposited with the clerk of the court this amount, with accumulated interest and thereby was released from all further liability. In the instant case, it is unreasonable because of the acceptance of the deposit of the money by the plaintiff, to expect the defendant to pay the expense of the litigation, which, according to the record, was to be paid by the plaintiff.

The bond itself, which was prepared by the plaintiff, will preclude plaintiff's recovery. By its provisions the plaintiff limits its liability to $75,000, which is in violation of section 2540, as amended, of the ordinance which governs. The plaintiff admits that the conditions of the bond violated the provisions of the ordinance, and now seeks to recover from the defendant for the expense it was required to pay, and to be absolved from its violation of the ordinance in question.

The contract must be based upon a good consideration and such as would justify the enforcement of its terms by the plaintiff. The general rule of law governing the enforcement of a contract, express or implied, is that by its terms it must not violate a statute or a city ordinance. This rule of law is well recognized, and it will not be necessary to cite authorities upon the question. It is to be noted from the provisions of the ordinance itself that "it shall be unlawful to

operate a public hack or other vehicle kept for hire . . . until and unless the applicant for a license hereunder deposits with the commissioner of assessments and licenses'' a bond in accordance with the provisions of the ordinance.

The plaintiff, however, strenuously contends that under the declared law and public policy of the State of Ohio, the provisions of the ordinance pursuant to which the bond was given would be held to be a part of the bond, and the attempted limitation of liability invalid. This contention, we believe, is worthy of consideration in the litigation now before us. If the bond prepared by the plaintiff is invalid because of failure to incorporate the provisions of the ordinance in question, then of course there was failure of consideration for the execution of the indemnity agreement, and as a result, as stated in this opinion, the plaintiff could not maintain its action.

We have considered the matters which have been called to our attention and others which we consider important, and are of the opinion that the plaintiff is not entitled to recover. Therefore, the decree of the court based upon the master's report, is not erroneous but is in conformity with the rules of law applicable to the case, and is affirmed.

*Decree affirmed.*

DENIS E. SULLIVAN, P. J.. and HALL. J.. concur.